UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| ORLANDO RAMIREZ, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. C-09-343 |
| | § | |
| AMERICAN POLLUTION CONTROL | § | |
| CORPORATION, | § | |
| | § | |
| Defendant. | § | |

## ORDER

On this day came on to be considered Defendant American Pollution Control Corporation's Motion for Summary Judgment. (D.E. 14.) For the reasons set forth below, Defendant's motion is GRANTED and all claims against Defendant are DISMISSED.

**I.   JURISDICTION**

The Court has federal subject matter jurisdiction over this lawsuit pursuant to 28 U.S.C. § 1333, which provides that "[t]he district courts shall have original jurisdiction, exclusive of the courts of the States, of … [a]ny civil case of admiralty or maritime jurisdiction."

**II.   FACTUAL BACKGROUND**

The facts, viewed in the light most favorable to the non-moving party (Plaintiff), are as follows:

Plaintiff Orlando Ramirez has a history of injuries and medical care relating to his back and neck. Plaintiff has made workers' compensation claims for injuries at least three times: once in 1979, when he hurt his back on a boat; again in 1986, when he hurt his back while raising up a wall; and a third time in 1989 or 1990, when he hurt his knee. (D.E. 14, Ex. 6, p. 45-46.) Plaintiff recovered "$10 to 11,000" for the 1979 accident, and recovered a "lifetime medical

coverage" for the 1986 accident. In 2002, Plaintiff "fell off a ladder," hurting his neck and back. (Id. at 48.) The medical report that was filled out after Plaintiff fell off the ladder indicates that Plaintiff experienced neck pain of a pain level "9" out of a scale of 1 to 10. (Id. at 49.) In 2004, Plaintiff was involved in a car accident, which also caused pain in his neck and lower back. (Id. at 53.) Plaintiff does not dispute that he made approximately 17 visits to the chiropractor from December 2002 to March 2005. (Id. at 54.)

On September 26, 2006, Plaintiff filled out an application to work for Defendant American Pollution ("AMPOL") as a deckhand. (Id. at 54, 57.) The top portion of the application, which Plaintiff initialled, stated as follows:

> I certify that the information contained in this application and accompanying resume, if any, is true and correct to the best of my knowledge and understood that falsification, misrepresentation and/or omission of information may be grounds for refusal to hire or if hired, dismissal.

When Plaintiff was asked in the application whether he had "ever received workers' compensation benefits for an injury that occurred at work?" Plaintiff answered "No." (D.E. 14, Ex. 6, p. 57.) When asked whether he had "ever had back trouble or injury to [his] back, head or neck?" Plaintiff answered "No."(Id.) When asked what "operations, accidents, broken bones, strains or serious illnesses" he had had, Plaintiff answered "None." (Id.) Plaintiff does not dispute that he answered each of these three questions untruthfully. (D.E. 14-6, p. 57.) Plaintiff was hired by Defendant the same day he applied, on September 26, 2006.

Less than a month later, on October 11, 2006, while a seaman employed by Defendant, Ramirez slipped and fell, seriously injuring himself. (D.E. 14, Ex. 6, p. 19.) He felt "immediate pain" in his neck, shoulder, elbow and wrist. (D.E. 14, Ex. 6, p. 30.) Since the accident, Plaintiff has undergone extensive medical treatment. He has had an MRI and has had his x-rays taken. (Id. at 38) He takes prescription pain medication for muscle spasms, pain, and anti-

inflammation.  (Id.)  He has taken Cortisone shots in order to "avoid having surgery" if possible. (Id.)  Further, he has gone through "two different courses of physical therapy." (Id.)

### III.    PROCEDURAL BACKGROUND

On December 21, 2006, Plaintiff filed suit against AMPOL in the Galveston Division of the Southern District of Texas. (C.A. No. 3:06-cv-796).  Plaintiff asserted claims against AMPOL for unseaworthiness and negligence under the Jones Act for injuries he sustained as a result of his October 11, 2006 fall.  After a bench trial, the court entered a judgment for Ramirez in the amount of $1800.

Plaintiff now brings this current suit against the same defendant, AMPOL, regarding the same October 11, 2006 incident.  Plaintiff filed this second suit in Texas state court, in the 343rd judicial district of Aransas County. (C.A. A-09-0161-CV-C.)   AMPOL timely removed this action to this Court. (D.E. 1.)  In this current lawsuit, Ramirez contends that AMPOL "failed to live up to its maintenance and cure obligations." (D.E. 1, Ex. 2, p. 3.)  Plaintiff states that he "does not seek recovery in this suit for damages caused by the vessel's unseaworthiness [or] for damages resulting from Defendant's negligence under 46 U.S.C. § 30104." (D.E. 1, Ex. 2, p. 4.)

Defendant AMPOL filed this motion for summary judgment on June 18, 2010. (D.E. 14.) The Court finds that Defendant is entitled to judgment as a matter for the reasons set forth below.

### VI.    DISCUSSION

#### A.    Summary Judgment Standard

Federal Rule of Civil Procedure 56 states that summary judgment is appropriate if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact." Fed. R. Civ. P. 56(c).  "[O]n summary judgment, the moving party has the initial burden of establishing that

there are no issues of material fact and that it is entitled to judgment in its favor as a matter of law." Breen v. Tex. A&M Univ., 485 F.3d 325, 331 (5th Cir. 2007) (citing Rivera v. Houston Indep. Sch. Dist., 349 F.3d 244, 246-47 (5th Cir. 2003)). "If the moving party meets this burden, the burden then shifts to the non-moving party to point to evidence showing that an issue of material fact exists." Breen, 485 F.3d at 331 (citing Rivera, 349 F.3d at 247). "In determining whether summary judgment is appropriate, we view all of the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in its favor." Breen, 485 F.3d at 331 (citing Coleman v. Sch. Bd. of Richland Parish, 418 F.3d 511, 515-16 (5th Cir. 2005)).

  **B.**  **Maintenance and Cure**

"A seaman who is injured or falls ill while he is in the service of the ship is entitled to recover 'maintenance' from his employer or the shipowner. Maintenance is intended to cover the reasonable costs the seaman incurs in acquiring food and lodging ashore during the period of his illness or disability. The obligation to provide maintenance and the accompanying duty to tender cure, i.e., medical care, to an ill or injured seaman are 'among the most ancient and pervasive of all liabilities imposed on a shipowner." Caulfield v. AC & D Marine, Inc., 633 F.2d 1129 (5th Cir. 1981) (citing Oswalt v. Williamson Towing Co., Inc., 488 F.2d 51, 54 (5th Cir. 1974)) See Baker v. Ocean Systems, Inc., 454 F.2d 379, 383 (5th Cir. 1972) ("The ancient right of a seaman to be maintained and cared for when injured in the service of his vessel is a right which courts have carefully protected.") "In the landmark case of O'Donnell v. Great Lakes Dredge & Dock Co., 318 U.S. 36, 63 S.Ct. 488, 87 L.Ed. 596 (1943), Chief Justice Stone noted, "From its dawn, the maritime law has recognized the seaman's right to maintenance and cure for injuries suffered in the course of his service to his vessel, whether occurring on sea or on land."

Baker v. Ocean Systems, Inc., 454 F.2d 379, 383 (5th Cir. 1972) (citing O'Donnel, 63 S.Ct. at 491.)

However, "[a]n employer is allowed to rely on certain legal defenses to deny [a claim for maintenance and cure.] One such defense [is the McCorpen defense.]" Brown v. Parker Drilling Offshore Corp., 410 F.3d 166, 170-71 (5th Cir. 2005)

### C. McCorpen Defense

The "McCorpen defense applies when an injured seaman has 'willfully concealed from his employer a preexisting medical condition.'" Johnson v. Cenac Towing, Inc., 544 F.3d 296, 301 (quoting Brown v. Parker Drilling Offshore Corp., 410 F.3d 166, 171.) "In order to establish a McCorpen defense, an employer must show that:

(1) the claimant intentionally misrepresented or concealed medical facts;

(2) the non-disclosed facts were material to the employer's decision to hire the claimant; and

(3) a connection exists between the withheld information and the injury complained of in the lawsuit.

Brown v. Parker Drilling Offshore Corp., 410 F.3d 166, 170-71 (5th Cir. 2005) (citing McCorpen v. Cent. Gulf S.S. Corp., 396 F.2d 547, 548-49 (5th Cir. 1968)). As discussed below, each of these three requirements has been met.

#### 1. Intentional concealment

"'[T]he "intentional concealment" element does not require a finding of subjective intent.'" Brown, 410 F.3d at 174 (quoting Vitcovich v. Ocean Rover O.N., No. 94-35047, 106 F.3d 411, 1997 WL 21205, at *3 (9th Cir. Jan. 8, 1997)). The Fifth Circuit, adopting the Ninth Circuit's interpretation of the "intentional concealment" requirement, explained:

> [McCorpen's "intentional concealment" requirement] refers to the rule that a seaman may be denied maintenance and cure for failure to disclose a medical condition only if he has been asked to reveal it. Failure to disclose medical information in an interview or questionnaire that is obviously designed to elicit such information therefore satisfies the "intentional concealment" requirement.

Id.; see also Evans v. Blidberg Rothchild Co., 382 F.2d 637, 640 (4th Cir. 1967) (reversing judgment for maintenance, holding that the seaman "made two misstatements of fact which materially affected his eligibility for employment with the shipowner" and finding "deliberate misrepresentation").

Plaintiff himself does not dispute that this intentional concealment element has been met. (D.E. 15, p. 6-8.) Indeed, in his employment application, Plaintiff made several statements that were untrue. When asked whether he had "ever had back trouble, or injury to [his] back, head, or neck," he answered "no," even though he had. (D.E. 14, Ex. 6, p. 200.) Further, when asked whether he had "ever received workers' compensation benefits for an injury that occurred at work," he answered "no," even though he had. (Id.) Finally, when asked what "operations, accidents, broken bones, strains or serious illnesses" he had had, Plaintiff answered "None," even though he admits that this was untrue. (Id.) This employment application constitutes a "questionnaire that is obviously designed to elicit [medical] information." Brown, 410 F.3d at 174. Plaintiff's failure to disclose his prior injuries and workers' compensation benefits on the questionnaire, thus, satisfies the "intentional concealment" requirement. (Id.)

### 2. Materiality of the information

"The fact that an employer asks a specific medical question on an application, and that the inquiry is rationally related to the applicant's physical ability to perform his job duties, renders the information material for the purpose of this analysis." Brown, 410 F.3d at 175.

Here, it is undisputed that Defendant asked the following "specific medical question[s] on [its] application":

> Have you ever received workers' compensation benefits for an injury that occurred at work?;
>
> Have you ever had back trouble or injury to your back, head or neck?; and
>
> What operations, accidents, broken bones, strains or serious illnesses have you had?

(D.E. 14, Ex. 6, p. 57).  Further, Plaintiff himself acknowledges that the "deckhand" position he was applying for would require him to "unloa[d] supplies" and do other "physical labor." (Id. at 57-58.)  Thus, because these medically-oriented application questions were "rationally related" to Plaintiff's "physical ability to perform his job duties," this information was "material" for purposes of applying the McCorpen defense. Brown, 410 F.3d at 175.

Plaintiff argues, however, that this information was not material, as evidenced by the following testimony by Clayton Humphrey, the person "in charge of hiring and firing captains and deckhands" for Defendant." (D.E. 18-1, p. 5.)

> **Counsel**: You can't sit here and say, "No, I wouldn't have hired him even if I had known about the chiropractor in '79 and '86," you would have had to just evaluate it further, is that fair?
>
> **Humphrey**: Well, I still probably wouldn't have because – I mean, unless like you said, Tony – if Galindo pushed the fact that he wanted Mr. Ramirez on the boat to work with him as a deckhand, and if I had known about that, any of the preexisting injuries or conditions that he had, then, like I said, if I would have known, we would have sent him to a different doctor for further evaluations.
>
> **Counsel**: So you cannot sit here in court and say, knowing what you know now, "I absolutely would not have hired Mr. Ramirez"; right?
>
> **Humphrey**: Like I said, the only way I would have, if Tony would have said, "Let's hire him.  I'd like to really have him on there," then we would get further evaluation.  But if you walked into my office and filled out an application and answered the same questions, that you had all those preexisting injuries, I would not hire you unless you've got somebody that already is in my employment that can say, "He's a good guy.  I'd like to have him working with me."

>**Counsel**: Didn't Tony Galindo already say that though?
>
>**Humphrey**: Yes, he directly told me this.
>
>**Counsel**: So you're not saying, "I absolutely would not have hired him" because you just told me, the one thing that you need, a strong recommendation from an employee who was present; right?
>
>**Humphrey**: On that particular case.

(D.E. 18-1, p. 47-48.)  Defendant contends that the above-cited testimony establishes that the non-disclosed facts were not material because Humphrey "would have hired Plaintiff even if [Humphrey] knew about Plaintiff's previous injury." (D.E. 15, p. 7.)  However, the above-cited testimony does not establish this to be the case.  First, whether or not an employee recommendation might have convinced Defendant to hire Plaintiff does not negate the materiality of Plaintiff's medical history in determining whether Plaintiff was physically qualified for the job.  Jauch v. Nautical Services, Inc., 470 F.3d 207, 213 (5th Cir. 2006) ("Past instances of back injury, some severe enough to require extensive treatment, are certainly facts material to [Defendant's] decision to hire [Plaintiff] as a deckhand.")  Second, this testimony indicates only that Humphrey, with knowledge of Plaintiff's medical history, might still have considered hiring Plaintiff, not that Humphrey would have hired Plaintiff.  In fact, Humphrey made clear that the only way AMPOL would actually hire someone with Plaintiff's medical history would be if Plaintiff underwent further medical testing.[1]  Third, there is undisputed evidence that, regardless of whether Plaintiff would have been hired in the first place had he answered the application questions truthfully, Humphrey would have terminated Plaintiff had he

---

[1] Humphrey testified: "Well if [Plaintiff] would have answered the questions truthfully about any kind of prior injuries, we would have still considered him to hire him, you know, if we would send him to another doctor and if he could tell, taking X-rays or whatever to see if he was, you know, any of his pre-injuries would hamper him in doing any work.  That would be the only way we would hire somebody that way." (D.E. 18-1, p. 46.)

found out that Plaintiff had untruthfully answered the medical questions on his application.[2] Given that the position Plaintiff applied for would require physical labor, that Plaintiff concealed information from Defendant in his application, and that the information Plaintiff concealed was pertinent to Plaintiff's ability to perform physical labor, this Court finds that the materiality requirement has been met. See Brown, 410 F.3d at 175.

### 3. Causality

Plaintiff does not dispute that "a connection exists between the withheld information and the injury complained of in the lawsuit." (D.E. 15, p. 6-7; Brown v. Parker Drilling Offshore Corp., 410 F.3d 166, 170-71 (5th Cir. 2005) (citing McCorpen v. Cent. Gulf S.S. Corp., 396 F.2d 547, 548-49 (5th Cir. 1968)). Indeed, to establish this causality requirement, "[a]ll that is required is a causal link between the pre-existing disability that was concealed and the disability incurred during the voyage." Brown, 410 F.3d at 176. "Courts in th[e Fifth] Circuit have routinely found such a causal link [where the claimed injury is in the exact same area of the body that was previously injured.]" Id. Here, there is no dispute that the injuries Plaintiff now complains of in this suit overlap with the injuries he sustained prior to the October 11, 2006 accident. Defendant has therefore established a causal connection under the McCorpen defense. Weatherford v. Nabors Offshore Corp., 2004 WL 414948 (E.D. La. 2004) ("Where plaintiff claims an injury in the exact same area of the back as was previously injured, the causal connection is clear.") Therefore, even viewing the evidence in the light most favorable to

---

[2] See Testimony of Humphrey (D.E. 18-1, p. 7) (Question: "If you had found out Mr. Ramirez had been untruthful on those questions [relating to workers' compensation, previous back, head, or neck problems, and previous accidents, broken bones, strains, or serious illnesses], would you have terminated him?" Answer: "Yes, sir.")

Plaintiff, the Court finds that Defendant has met the causality requirement, the third and final requirement to establish the McCorpen defense.[3]

## IV. CONCLUSION

For the reasons set forth above, the Court hereby GRANTS Defendant's motion for summary judgment. (D.E. 14.) All claims against Defendant are DISMISSED.

SIGNED and ORDERED this 13th day of August, 2010.

Janis Graham Jack
United States District Judge

---

[3] In addition to arguing that it is entitled to summary judgment on the basis of the McCorpen defense, Defendant also argues that it is entitled to summary judgment on the basis of collateral estoppel. (D.E. 14.) However, because Defendant has "mounted a successful McCorpen defense" by establishing all three requirements, this Court need not consider Defendant's alternate argument for summary judgment. Brown v. Parker Drilling Offshore Corp., 410 F.3d 166, 170-71 (5th Cir. 2005).